**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In the matter of: | Case 10-51895-tjt<br>Chapter 11 |
| PITA FRANCHISE CORPORATION | Hon. Thomas J. Tucker |
| Debtor. | |

_________________________________/

**TRUSTEE'S MOTION FOR:**
**(i) APPROVAL OF SETTLEMENT AGREEMENT; AND (ii) DISMISSAL OF THIS BANKRUPTCY CASE PURSUANT TO 11 U.S.C. 1112(b)**

Stuart A. Gold ("Trustee") states:

1. Pita Franchise Corporation ("Debtor" or "Pita Corp.") acts as the franchisor of the "Mr. Pita" restaurant franchise.

2. On April 11, 2010, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

3. On June 3, 2010, the Court entered an order requiring the appointment of a Chapter 11 operating trustee for Debtor pursuant to 11 U.S.C. §1104(a) and ordered the United States Trustee to appoint such an operating trustee pursuant to 11 U.S.C. §1104(d).

4. On June 4, 2010, the Court entered an order approving Trustee's appointment as the operating trustee of Debtor's Chapter 11 bankruptcy estate (the "Estate").

5. Debtor's bankruptcy petition was preceded by a lawsuit (the "State Court Action") filed by Frank J. Lombardo ("Lombardo") in Macomb County Circuit Court (the "State Court") against Debtor and Kousay Askar a/k/a Casey Askar ("Askar").

6. In the State Court Action, Lombardo alleged that Debtor and Askar breached the various agreements (the "Transaction

Agreements") pursuant to which Lombardo sold his majority interest in Debtor to Askar, including the following:

- Stock Purchase Agreement, in which, among other things, it was agreed that: (a) Lombardo would sell to Askar 986 shares of the Class A common stock of Pita Corp., representing approximately 54% of Pita Corp.'s current issued and outstanding shares of Class A common stock and approximately 51% of Pita Corp.'s total issued and outstanding shares of common stock; (b) the purchase price for such stock would be $400,000, $200,000 of which would be paid immediately with the remainder being paid pursuant to the terms of a Promissory Note; and (c) Pita Corp. would purchase Lombardo's remaining shares of the Corporation for "fair value" if Lombardo exercised its "Put Right" upon the occurrence of certain triggering events;

- Employment Agreement, in which, among other things, it was agreed that: (a) Lombardo would be employed by Pita Corp. to act as its President for a term of five years; (b) Pita Corp. would pay Lombardo a base salary of $85,000 per year; and (c) Pita Corp. would pay Lombardo a "Monthly Bonus" and a "Covenant Payment";

- Promissory Note Guaranty, pursuant to which Pita Corp. guaranteed Askar's obligations to pay Lombardo the remaining amount owing for the stock under the Promissory Note; and

- Security Agreement, in which Pita Corp. granted Lombardo a security interest in virtually all of its assets, including its right to receive payments under any franchise agreement, to secure payment of certain of Pita Corp.'s obligations under the Employment Agreement and Promissory Note Guaranty.

7. Among other things, Lombardo alleged in the State Court Action that Debtor and Askar breached the Transaction Agreements when Debtor terminated Lombardo's employment and ceased making the payments required to be made to Lombardo under the Transaction Agreements.

8. On or about November 2, 2009, November 23, 2009 and December 23, 2009, Lombardo was awarded a series of judgments against Debtor and Askar by the State Court.

9. The judgments against Askar personally (the "Askar Judgments") total approximately $536,000 and the judgments against Debtor (the "Pita Corp. Judgments") total approximately $1,037,000.

10. Part of the indebtedness owing under the Pita Corp. Judgments is secured pursuant to the Security Agreement.

11. On April 12, 2010, the State Court entered an order appointing John J. Simon (the "State Court Receiver") as receiver over all of the assets of Askar for the purpose of collecting the Askar Judgments.

12. The State Court Receiver is presently holding $43,654 (the "Receiver Fund"), which represents the cash surrender value of a life insurance policy owned by Askar.

13. Lombardo and/or an entity or entities controlled by him previously owned and operated 7 Mr. Pita franchise locations (the "Lombardo Franchises"). Lombardo and/or an entity controlled by him currently owns one Mr. Pita franchise location (the "Remaining Lombardo Franchise").

14. Trustee believes that the Estate has claims against Lombardo with respect to amounts paid by Debtor to Lombardo under the Transaction Agreements and may have additional claims against Lombardo (and/or the entities which owned and operated the Lombardo

Franchises), including, but not limited to claims with respect to Lombardo's nonpayment of franchise fees owing with respect to the Lombardo Franchises (collectively, the "Lombardo Claims").

15. Trustee believes that the Estate may have claims against Askar (the "Askar Claims"), including, but not limited to, claims arising out of and/or related to the operation of Debtor after the execution of the Transaction Documents.

16. Trustee presently has approximately $30,000 in the Estate; approximately $7,000 of which relates to advertising co-op fees paid in by franchisees for advertising. All of the funds in the Estate other than the funds relating to the advertising co-op are hereinafter referred to as the "Cash On Hand." The advertising co-op funds are hereinafter referred to as the "Co-op Funds."

17. Contingent upon the Court's approval, Trustee, Askar and Lombardo have entered into a Settlement Agreement, a copy of which is attached hereto and incorporated herein as Exhibit 2.

18. This Motion is being filed to obtain Court approval of the Settlement Agreement and for entry of an order dismissing this bankruptcy case consistent with the Settlement Agreement.

19. Among other things, the Settlement Agreement provides that:[1]

---

1 To the extent of any inconsistencies between the description of the terms of the settlement as set forth in this Motion and the Settlement Agreement, the terms of the Settlement Agreement control.

(a) Askar shall continue to own the stock in Debtor previously owned by Lombardo and any remaining shares owned by Lombardo shall be transferred to Askar;

(b) Askar shall pay Lombardo a total of $425,000 (the "Settlement Amount"), consisting of a down payment (the "Down Payment") in the amount of $155,000 and the remaining $270,000 being paid over an 18 month period, which obligation shall be secured by a pledge by Askar of his stock in Debtor to Lombardo, as well as an assignment by Askar of his right to receive payments under a consulting agreement;

(c) As of the Closing, Lombardo is releasing any and all claims that he has against Pita Corp. and/or the Estate, including the claims evidenced by the Pita Corp. Judgments;

(d) Within seven days after Closing, Lombardo shall file with the State Court satisfactions of judgment with respect to the Pita Corp. Judgments;

(e) As of the Closing, Askar and Lombardo are providing Trustee and his professionals with releases and Trustee is providing Lombardo with a release;

(f) Within five days after payment of the Settlement Amount in full, Lombardo shall file with the State Court satisfactions of judgment with respect to the Askar Judgments; and

(g) Askar shall pay Trustee the amount of $80,000, which amount combined with the Cash On Hand is referred to as the Trustee

Fund and which shall be used as discussed below to pay administrative expenses.

20. In the event that the Court fails to grant the relief requested in this Motion, all amounts previously paid under the Settlement Agreement by Askar shall be returned to him.

21. In the event that the Court grants the relief requested in this Motion, a closing (the "Closing") on the Settlement Agreement will be scheduled within fourteen days of entry of the Court's Order.

22. The Settlement Agreement also provides that, among other things, the following events shall occur at the Closing:

(a) Trustee shall pay himself $20,000 from the Trustee Fund as compensation for Trustee's fee in connection with this bankruptcy case;[2]

(b) Trustee shall turn over the Co-Op Funds to Pita Corp.;

(c) The Down Payment (consisting of the Receiver Fund and the roughly $111,346 held in Lombardo's attorneys' client trust account as further set forth in the Settlement Agreement) shall be released to Lombardo; and

(d) All of the documents and agreements contemplated by the Settlement Agreement shall be executed and exchanged.

---

[2] The parties to the Settlement Agreement have agreed that, subject to the Court granting the relief being requested by this Motion, the fee to be paid to Trustee shall be $20,000.

23. As set forth fully in the Settlement Agreement, Trustee is to retain the Trustee Fund after Closing. Trustee is to utilize the Trustee Fund to promptly pay any and all outstanding administrative expenses. To the best of Trustee's knowledge, after the $20,000 fee is paid to Trustee at the Closing, the outstanding administrative expenses consist of amounts owing to the United States Trustee and to Trustee's counsel, Jacob & Weingarten, P.C. The Settlement Agreement contemplates that the United States Trustee fees will be paid as soon as possible after the Closing and that Jacob & Weingarten, P.C. will file a fee application within fifteen days after the Closing (and such fees shall be paid promptly after the Court enters an order with respect to the fee application).

24. The Settlement Agreement further provides that any amounts remaining in the Trustee Fund after payment of the administrative expenses shall be refunded by Trustee to Askar.

25. Upon payment of the amounts remaining in the Trustee Fund to Askar, Trustee will file a certification with the Court indicating that: (i) the Closing has occurred; (ii) all payments required to be made by Trustee pursuant to the Settlement Agreement have been made; and (iii) the case is ready to be dismissed.

26. Additionally, under the Settlement Agreement, if Askar defaults on his payment obligations to Lombardo (i.e., the obligation to make the monthly payments as set forth above) and an

order for relief is subsequently entered against Debtor, then nothing in the Settlement Agreement shall impact a debtor-in-possession or a bankruptcy trustee from pursuing the Askar Claims (and such claims are expressly reserved).

27. Trustee believes that the settlement provided for in the Settlement Agreement (which requires the dismissal of this bankruptcy case) is in the best interest of the Estate and its creditors for a number of reasons. First, Debtor's liability to Lombardo under the Pita Corp. Judgments shall be discharged.[3] The Settlement Agreement should allow Debtor to move forward with its business and pay its creditors (which are minimal) through its operations outside of bankruptcy.[4] In addition, the Estate will avoid the costs and uncertainty of the bankruptcy case, including the investigation and pursuit of litigation with respect to the Lombardo Claims and the Askar Claims.

28. Attached as Exhibit 1 is a proposed order (the "Proposed Order") granting the relief being requested herein.

**ACCORDINGLY**, Trustee requests the Court to enter the Proposed Order, and grant such additional relief as the Court deems appropriate under the circumstances.

---

[3] Lombardo purports to be by far the Estate's largest creditor and the only creditor asserting a lien against Debtor's assets.

[4] Not counting any claims of Lombardo, Askar and any of their related entities, it appears that the claims of the creditors aggregate less than $100,000.

Respectfully submitted,

JACOB & WEINGARTEN, P.C.

Dated: August 26, 2010

By: /s/ Howard S. Sher

Howard S. Sher (P38337)
Michele L. Walton (P70795)
Attorneys for Stuart A. Gold,
Operating Trustee of the
Chapter 11 Bankruptcy Estate
2301 W. Big Beaver Road
Suite 777
Troy, Michigan 48084
(248) 649-1900
howard@jacobweingarten.com

# Exhibit 1

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In the matter of:

PITA FRANCHISE CORPORATION

Debtor.
_______________________________/

Case 10-51895-tjt
Chapter 11
Hon. Thomas J. Tucker

**ORDER GRANTING TRUSTEE'S MOTION FOR:**
**(i) APPROVAL OF SETTLEMENT AGREEMENT; AND (ii) DISMISSAL OF THIS BANKRUPTCY CASE PURSUANT TO 11 U.S.C. 1112(b)**

This matter having come before the Court pursuant to Trustee's Motion For (i) Approval Of Settlement Agreement; And (ii) Dismissal Of This Bankruptcy Case Pursuant To 11 U.S.C. 1112(b) (the "Motion"); notice of the Motion having been duly served in accordance with all applicable rules; no objection to the Motion having been filed; and the Court being otherwise duly advised of the facts upon which the Motion is based;

**ACCORDINGLY, IT IS HEREBY ORDERED** as follows:

1. The Motion is granted, and the Settlement Agreement (a copy of which is attached as Exhibit 2 to the Motion) and the settlement provided for therein is approved.[1]

2. The Closing shall be scheduled within fourteen days from the entry of this Order.

3. Among other things, the following events shall occur at the Closing:

---

1 All capitalized terms herein shall have the same meaning assigned to them in the Motion.

(a) Trustee shall pay himself $20,000 from the Trustee Fund as compensation for Trustee's fee in connection with this bankruptcy case;

(b) Trustee shall turn over the Co-Op Funds to Pita Corp.;

(c) The Down Payment (consisting of the Receiver Fund and the $111,346 held in Lombardo's attorneys' client trust account) shall be released to Lombardo; and

(d) All of the documents and agreements contemplated by the Settlement Agreement shall be executed and exchanged. Trustee is authorized to execute any and all documents necessary to effectuate the terms of the Settlement Agreement.

4. As soon as possible after Closing, Trustee shall pay from the Trustee Fund any and all administrative expenses, including any amounts owing to the United States Trustee.

5. Within 15 days after the Closing, Trustee's counsel shall file a final fee application with the Bankruptcy Court.

6. Trustee shall pay from the Trustee Fund, the amount of fees and costs approved by the Bankruptcy Court with respect to Trustee's counsel's fee application.

7. After payments are made to Trustee's counsel, the United States Trustee and any other administrative expense claimants, any amounts remaining in Trustee's Fund shall be refunded by Trustee to Askar.

8. Within 5 days of the payment of the amounts remaining in the Trustee Fund to Askar, Trustee shall file a certification (the "Certification") with the Court indicating that: (i) the Closing has occurred; (ii) all payments required to be made by Trustee pursuant to the Settlement Agreement have been made; and (iii) the case is ready to be dismissed.

9. Upon receipt of the Certification, the Court will enter an order dismissing this bankruptcy case.

# Exhibit 2

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "Agreement") is entered into as of August 23, 2010, and is by and among Kousay Askar a/k/a Casey Askar ("Askar"), Frank J. Lombardo, individually and as trustee of the Frank J. Lombardo Trust u/a/d November 11, 2002 ("Lombardo"), Stuart A. Gold ("Trustee"), the operating trustee of the Chapter 11 bankruptcy estate (the "Estate") of Pita Franchise Corp. ("Pita Corp."), and, to a limited extent, John J. Simon (the "State Court Receiver"), in his capacity as a court appointed receiver.

## RECITALS

A. Pita Corp., which acts as the franchisor of the "Mr. Pita" restaurant franchise, was incorporated by Lombardo in 1994.

B. As of July 31, 2007, Lombardo owned 1,250 shares of Class A stock of Pita Corp., which represented approximately 68.5% of Pita Corp.'s total current issued and outstanding Class A common shares.

C. On August 1, 2007, Lombardo, Pita Corp. and Askar, entered into, among other things, the following agreements (the "Transaction Agreements") in order to effectuate, among other things, Lombardo's sale of his interest in Pita Corp. to Askar:

- Stock Purchase Agreement, in which, among other things, it was agreed that: (a) Lombardo would sell to Askar 986 shares of the Class A common stock of Pita Corp., representing approximately 54% of Pita Corp.'s current issued and outstanding shares of Class A common stock and approximately 51% of Pita Corp.'s total issued and outstanding shares of common stock; (b) the purchase price for such stock would be $400,000, $200,000 of which would be paid immediately with the remainder being paid pursuant to the terms of a Promissory Note; and (c) Pita Corp. would purchase Lombardo's remaining shares of the Corporation for "fair value" if Lombardo exercised his "Put Right" upon the occurrence of certain triggering events;

- Employment Agreement, in which, among other things, it was agreed that: (a) Lombardo would be employed by Pita Corp. to act as its President for a term of five years; (b) Pita Corp. would pay Lombardo a base salary of $85,000 per year; and (c) Pita Corp. would pay Lombardo a "Monthly Bonus" and a "Covenant Payment";

- Promissory Note Guaranty, pursuant to which Pita Corp. guaranteed Askar's obligations to pay Lombardo the remaining amount owing for the stock under the Promissory Note; and

- Security Agreement, in which Pita Corp. granted Lombardo a security interest in virtually all of its assets, including its right to receive payments under any franchise agreement, to secure payment of certain of Pita Corp.'s obligations under the Employment Agreement and Promissory Note Guaranty.

D. From August 1, 2007 through on or about November 20, 2008, Lombardo served as Pita Corp.'s President.

E. On or about November 21, 2008, Pita Corp. terminated Lombardo's employment and ceased making payments to Lombardo.

F. OnDecember 2, 2008, Lombardo filed a lawsuit (the "State Court Action") in Macomb County Circuit Court (the "State Court"), which was assigned case no. 2008-5324-CK, against Askar and Pita Corp. seeking damages for, among other things, breach of the Stock Purchase Agreement, Employment Agreement, Security Agreement, and Promissory Note Guaranty.

G. On or about November 2, 2009, November 23, 2009 and December 23, 2009, Lombardo was awarded a series of judgments against Pita Corp. and Askar.

H. The judgments against Askar personally (the "Askar Judgments") total approximately $536,569.28 and the judgments against Pita Corp. (the "Pita Corp. Judgments") total approximately $1,037,201.51.

I. Part of the indebtedness owing under the Pita Corp. Judgments is secured pursuant to the Security Agreement.

J. Lombardo and/or an entity or entities controlled by him previously owned and operated 7 Mr. Pita franchise locations (the "Lombardo Franchises"). Lombardo and/or an entity controlled by him currently owns one Mr. Pita franchise location (the "Remaining Lombardo Franchise").

K. On April 11, 2010, Pita Corp. filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code

in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court"), which was assigned case no. 10-51895-tjt (the "Bankruptcy Case").

L. On April 12, 2010, the State Court entered an order appointing the State Court Receiver as receiver over all of the assets of Askar for the purpose of collecting the Askar Judgments.

M. The State Court Receiver is presently holding $43,654.00 (the "Receiver Fund"), which represents the cash surrender value of a life insurance policy owned by Askar.

N. On June 3, 2010, the Bankruptcy Court entered an order requiring the appointment of a Chapter 11 operating trustee for Pita Corp. pursuant to 11 U.S.C. §1104(a) and ordering the United States Trustee to appoint such an operating trustee pursuant to 11 U.S.C. §1104(d).

O. On June 4, 2010, the Bankruptcy Court entered an order approving Trustee's appointment as the operating trustee.

P. Trustee believes that the Estate may have claims against Lombardo with respect to the Transaction Agreements and may have additional claims against Lombardo (and/or the entities which owned or operated the Lombardo Franchises), including, but not limited to, claims with respect to the

alleged nonpayment of franchise fees relative to the Lombardo Franchises (collectively, the "Lombardo Claims").

Q. Trustee believes that the Estate may have claims against Askar (the "Askar Claims"), including, but not limited to, claims arising out of and/or related to the operation of Pita Corp. after execution of the Transaction Agreements.

R. Trustee presently has approximately $30,000 in the Estate; approximately $7,000 of which relates to advertising co-op fees paid in by franchisees for advertising. In addition, Trustee will continue to collect funds on behalf of the Estate until the Closing (as that term is hereinafter defined). All of the funds in the Estate other than the funds relating to the advertising co-op are hereinafter referred to as the "Cash On Hand." The advertising co-op funds are hereinafter referred to as the "Co-op Funds."

S. The parties have agreed to settle their disputes on the grounds set forth herein.

**NOW, THEREFORE,** for the consideration set forth herein, the receipt and sufficiency of which is hereby acknowledged by the parties hereto, **IT IS AGREED AS FOLLOWS:**

1. Askar shall continue to own the 986 shares of the Class A common stock of Pita Corp. transferred to him pursuant to the Stock Purchase Agreement.

2. At the Closing, Lombardo shall transfer to Askar the remaining 264 shares of Class A common stock of Pita Corp. (whether now owned or after acquired) owned by Lombardo.[1]

3. Askar shall pay Lombardo a total of $425,000 (the "Settlement Payment") as follows:

(a) a down payment in the amount of $155,000 (the "Down Payment") consisting of: (i) the Receiver Fund (which shall be turned over by the State Court Receiver to Lombardo at the Closing); and (ii) the difference between $155,000 and the amount of the Receiver Fund (i.e., $111,346), which shall be paid by Askar into O'Reilly Rancilio, P.C.'s client trust account on or before September 1, 2010 and disbursed to Lombardo at the Closing; and

(b) the remaining $270,000 (the "Monthly Payments") shall be paid over an 18 month period with $15,000 being paid on or before the first day of each month starting on October 1, 2010. The Monthly Payments shall be

[1] Thus, after the Closing, Askar shall own all of the stock in Pita Corp. previously owned by Lombardo.

made payable to Lombardo and O'Reilly Rancilio, P.C. and delivered to O'Reilly Rancilio, P.C., attn: Charles Turnbull, 12900 Hall Road, Suite 350, Sterling Heights MI 48313.

4. At the Closing, in order to secure Askar's payment of the Monthly Payments, Askar shall pledge all of his shares of Class A common stock of Pita Corp. to Lombardo pursuant to a pledge agreement. The Pledge Agreement shall be in the form attached hereto as Exhibit A.

5. Prior to the Closing, Askar shall have entered into a consulting agreement (the "Consulting Agreement") with Papa Romano's Enterprises, LLC ("Papa Romano's"), pursuant to which Papa Romano's shall have agreed to pay Askar at least $15,000 per month starting on or before October 1, 2010 and running through at least March 2012. A copy of the Consulting Agreement is attached hereto as Exhibit B.

6. As set forth in the Consulting Agreement, as security for Askar's obligations with respect to the Monthly Payments, effective as of the Closing, Askar hereby assigns to Lombardo and grants a security interest in his right to receive payments under the Consulting Agreement, and, as set forth in the Consulting Agreement, all payments

(up to $15,000 per month) under the Consulting Agreement shall be made by Papa Romano's directly to Lombardo (and payable as referenced in section 3(b) above) until Askar's obligation to make the Monthly Payments has been satisfied.

7. No later than September 1, 2010, Askar shall pay Trustee $80,000, which amount combined with the Cash On Hand as of the Closing shall be referred to herein as the "Trustee Fund."

8. At any time, at his option, Askar can pre-pay without penalty any amounts owing under this Agreement.

9. Askar and Lombardo shall stipulate to the entry of an order (the "Stay Stipulation Order") staying the State Court Action and terminating the State Court Receiver and shall submit the Stay Stipulation Order to the State Court for entry within one business day of the Closing. The Stay Stipulation Order shall be in the form attached hereto as Exhibit C.

10. At the Closing: (a) any and all claims of any kind or nature held by Lombardo (and any entity in which he has an interest) against Pita Corp. and/or the Estate shall be deemed satisfied and/or waived, including, but not limited to, the claims against Pita Corp. evidenced by the Pita Corp. Judgments; and (b) any security interest held by Lombardo with respect to Pita Corp.'s assets shall be

deemed to have been discharged. Within seven days after the Closing, Lombardo shall file with the State Court satisfactions of the Pita Corp. Judgments and shall also file a UCC termination statement with respect to his security interests in Pita Corp.'s assets. Notwithstanding anything contained herein to the contrary, such release is not intended to and does not affect and/or impair Lombardo and/or Pita Development, Inc.'s rights as a franchisee of Pita Corp.

11. Within five days of the execution of this Agreement, Trustee shall file a motion (the "Bankruptcy Motion") in the Bankruptcy Case seeking the entry of an order (the "Bankruptcy Order") approving this Agreement and providing for the dismissal of the Bankruptcy Case. The Bankruptcy Order shall be in the form attached hereto as Exhibit D.

12. In the event that the Bankruptcy Court denies the relief requested in the Bankruptcy Motion, this Agreement shall become null and void and the amount being held in O'Reilly Rancilio P.C.'s client trust account (i.e., $111,346) and the amount paid by Askar to Trustee pursuant to paragraph 7 of this Agreement shall be promptly returned to Askar.

13. In the event that the Bankruptcy Court grants the relief requested in the Bankruptcy Motion, a closing (the "Closing") of this Agreement shall take place within fourteen days after the entry of the Bankruptcy Order at the offices of Jacob & Weingarten, unless the location of the Closing is otherwise agreed to by the parties hereto.

14. The following events shall occur at the Closing:

a. Trustee shall pay himself $20,000 from the Trustee Fund as compensation for Trustee's fee in connection with the Bankruptcy Case;

b. Trustee shall turn over the Co-Op Funds to Pita Corp.;

c. The Down Payment (consisting of the Receiver Fund and the $111,346 held in O'Reilly Rancilio, P.C.'s client trust account) shall be released to Lombardo;[2]

d. The State Court Receiver's fee is $25,000.00. Lombardo shall pay the State Court Receiver $20,000 at the Closing. Askar shall pay at the Closing to the State Court Receiver, the remaining $5,000.

e. The Pledge Agreement shall be executed by Askar and delivered to Lombardo;[3]

---

[2] The State Court Receiver is signing this Agreement to confirm that he has agreed to accept $25,000 in total satisfaction of his fees and costs in connection to the receivership referenced in Recital L above and to confirm his consent to disburse the Receiver Fund as set forth herein.

f. Lombardo shall be provided with an executed copy of the Consulting Agreement; and

g. Subject to paragraph 18, Trustee shall retain the Trustee Fund.[4]

15. As soon as possible after Closing, Trustee shall pay from the Trustee Fund all outstanding administrative expenses, including any and all amounts owing to the United States Trustee.

16. Within 15 days after the Closing, Trustee's counsel shall file a final fee application with the Bankruptcy Court.

17. Trustee shall pay from the Trustee Fund, the amount of fees and costs approved by the Bankruptcy Court with respect to Trustee's counsel's fee application.

18. After the payments are made to Trustee's counsel and the United States Trustee (and any other administrative expenses) as set forth in this Agreement, any amounts remaining in the Trustee Fund shall be returned by Trustee to Askar and, at that point, the Bankruptcy Case will be dismissed.

---

[3] In addition, Askar shall take any other action reasonably requested by Lombardo in order to effectuate the pledge.

[4] Subsequent to the Closing, all franchise fees and advertising co-op fees shall be paid directly to Pita Corp. and not to Trustee.

19. Askar shall be in default of his obligations to Lombardo under this Agreement if he fails to make a required Monthly Payment within seven days of receipt of written notice of such failure to Askar and his attorney, Robert B. Nathan. If such a default occurs, Lombardo shall have the right to file a certification of default, in which case the State Court shall enter an order lifting the stay and reappointing the State Court Receiver. In addition, at that point, the amount of payments made hereunder to Lombardo shall be credited against the Askar Judgments and Lombardo shall be entitled to take collection action with respect to the Askar Judgments.

20. Within five days after payment of the Settlement Amount in full (i.e. last settlement payment), Lombardo shall file with the State Court satisfactions of judgment with respect to the Askar Judgments.

21. Neither Lombardo nor his operating entity Pita Development, Inc. shall be required to pay any franchise fees to Pita Corp. with respect to the Remaining Lombardo Franchise for twelve months following the Closing. At the expiration of that twelve month period, Pita Development, Inc. shall thereafter be required to pay Pita Corp. a franchise fee in the amount of 3% of its gross sales on a weekly basis. Effective as of the Closing, Trustee waives

any claims that Pita Corp. and/or the Estate may have against Pita Development, Inc., Pita, Inc., Lombardo and/or entities controlled by him for any franchise fees that may be owing with respect to the Lombardo Franchises.

22. In the event that Askar defaults on his payment obligations to Lombardo under this Agreement **and** an order for relief is subsequently entered against Pita Corp., nothing in this Agreement shall impact a debtor-in-possession or a bankruptcy trustee from pursuing the Askar Claims and such claims are expressly reserved to a debtor-in-possession or a bankruptcy trustee only.

23. Lombardo, Askar, Pita Corp. and their respective agents, employees and affiliated business entities agree to refrain from making any statements, written or verbal, that disparage and/or defame the personal or business reputation, practices, or conduct of the other, their respective employees, directors, and officers.

24. Except for Askar's obligations under this Agreement, effective upon entry of the satisfactions of judgment with respect to the Askar Judgments to be filed by Lombardo with the State Court pursuant to Paragraph 20 hereof, Lombardo hereby fully and forever releases, acquits and discharges Askar, his attorneys, heirs, executors, family members, employees, administrators, personal

representatives, shareholders, officers, directors, successors and assigns, from all complaints, charges, claims, liabilities, demands, debts, accounts, obligations, promises, suits, actions, causes of action, contracts, covenants, sums of money, and rights whatsoever in law or in equity, including claims for damages, attorney fees and costs, whether known or unknown, foreseen or unforeseen, which Lombardo now has, or which Lombardo at any time hereafter may claim to have, arising out of anything that occurred or did not occur at any time in the past up to and including the date of this Agreement, including all claims set forth in the State Court Action or based upon any facts occurring prior to the date of this Agreement.

25. Effective as of the Closing, Lombardo (both individually and on behalf of any entity in which he has an interest) hereby fully and forever releases, acquits and discharges Trustee and his attorneys, and their successors and assigns, from all complaints, charges, claims, liabilities, demands, debts, accounts, obligations, promises, suits, actions, causes of action, contracts, covenants, sums of money, and rights whatsoever in law or in equity, including claims for damages, attorney fees and costs, whether known or unknown, foreseen or unforeseen, which Lombardo (or any entity in which he has an interest)

now has, or which Lombardo (or any entity in which he has an interest) at any time hereafter may claim to have, arising out of anything that occurred or did not occur at any time in the past up to and including the date of this Agreement.

26. Effective as of the Closing, Askar (both individually and on behalf of any entity in which he has an interest) hereby fully and forever releases, acquits and discharges Trustee, his attorneys, and their successors and assigns, from all complaints, charges, claims, liabilities, demands, debts, accounts, obligations, promises, suits, actions, causes of action, contracts, covenants, sums of money, and rights whatsoever in law or in equity, including claims for damages, attorney fees and costs, whether known or unknown, foreseen or unforeseen, which Askar (or any entity in which he has an interest) now has, or which Askar (or any entity in which he has an interest) at any time hereafter may claim to have, arising out of anything that occurred or did not occur at any time in the past up to and including the date of this Agreement.

27. Effective as of the Closing, Askar, and Trustee, on behalf of Pita Corp. and the Estate, hereby fully and forever release, acquit and discharge Lombardo and any

entity for which he is a shareholder or member, his attorneys, heirs, executors, family members, employees, administrators, personal representatives, shareholders, officers, directors, successors and assigns, from all complaints, charges, claims, liabilities, demands, debts, accounts, obligations, promises, suits, actions, causes of action, contracts, covenants, sums of money, and rights whatsoever in law or in equity, including claims for damages, attorney fees and costs, whether known or unknown, foreseen or unforeseen, which Askar, Pita Corp., the Estate and/or Trustee now have, or which they at any time hereafter may claim to have, arising out of anything that occurred or did not occur at any time in the past up to and including the date of this Agreement, including all claims set forth in the State Court Action or based upon any facts occurring prior to the date of this Agreement.

28. Lombardo, Trustee and Askar understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims. No action taken by Lombardo and/or Askar (individually and on behalf of Pita Corp.), or either of them, either previously or in connection with this Agreement shall be deemed or construed to be (a) an admission of the truth or falsity of any claims heretofore made or (b) an acknowledgment or

admission by either party of any fault or liability whatsoever to the other party or to any third party.

29. This Agreement contains the entire agreement between the parties, is the only agreement between them regarding compromise, and is being freely and voluntarily entered into by the parties, who have each had the advice of counsel, or the opportunity to obtain the advice of counsel, prior to entering into this Agreement. Further, each party hereto is relying solely on the advice of his own counsel with respect to this Agreement.

30. The parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement.

31. The parties to this Agreement state that they have carefully read the foregoing, know the contents hereof, and are signing the same as their own free act.

32. The parties to this Agreement shall execute any and all documents necessary to effectuate the terms of this Agreement.

33. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument and shall be effective as though all of the parties have signed the same copy of this Agreement.

34. For purposes of this Agreement, a signature or signatures delivered via facsimile or e-mail (in portable document format) shall be deemed to be an original signature or signatures when attached to this Agreement or any other document provided for in this Agreement.

35. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, personal representatives, successors and assigns.

36. This Agreement may not be modified unless such modification is in writing and signed by the party against whom enforcement of the modification is sought.

37. This Agreement shall be construed in accordance with and governed by Michigan law.

38. Upon execution of this Agreement, the State Court Receiver shall return to Pita Corp. any and all documents, books and records of Pita Corp. in his possession or control. Upon Askar's payment of the final Monthly Payment, the State Court Receiver shall return to Askar any and all

documents belonging to Kousay Askar and any related or affiliated persons or entities, including Askar Askar, CJ's Brewery and Richardson Foods. Lombardo agrees, upon execution of this Agreement, to return to the State Court Receiver any and all documents which Lombardo received from the State Court Receiver, if any, in connection with Pita Corp., Askar, and/or the State Court Action.

39. All notices, consents, requests, demands, designations or other communications which may or are required to be given by Lombardo or Askar and Pita Corp. to the other hereunder shall be in writing and shall be deemed to have been duly given when either: (i) personally delivered; or (ii) two business days after being deposited in the United States mail, certified or registered, postage prepaid; or (iii) one business day after being deposited with a nationally recognized overnight courier service; or (iv) sent by email or facsimile transmission and immediately followed by delivery in accordance with (i), (ii) or (iii) above, and in all instances addressed as follows:

| | |
|---|---|
| To Lombardo: | Frank Lombardo<br>48238 Lake Circle<br>Shelby Township, MI 48317 |
| With a copy to: | Charles E. Turnbull<br>O'Reilly Rancilio, P.C.<br>12900 Hall Road, Suite 350 |

Sterling Heights, MI 48313
Fax: 586-726-1560

| | |
|---|---|
| To Askar and Pita Corp.: | Kousay Askar<br>2525 S. Telegraph Rd., Ste300<br>Bloomfield Hills, MI 48302<br>Fax: 248-888-0011<br>Email: casey.askar@yahoo.com |
| With a copy to: | Robert B. Nathan, Esq.<br>Nathan Zousmer, P.C.<br>29100 Northwestern Hwy., |
| Suite 260 | Southfield, Michigan 48034<br>Fax: 248-351-0487<br>rnathan@nathanzousmer.com |

or to such other place as a party may from time to time designate in a notice to the other parties.

**IN WITNESS WEREOF**, the parties hereto have executed this Agreement as of the day and year first above written.

________________________
KOUSAY ASKAR

________________________
FRANK J. LOMBARDO,
Individually and as trustee of the Frank J. Lombardo Trust u/a/d November 11, 2002

________________________
STUART A. GOLD,
Operating Trustee of the Chapter 11 Bankruptcy Estate of Pita Franchise Corp.

Sterling Heights, MI 48313
Fax: 586-726-1560

To Askar and Pita Corp.:

Kousay Askar
2525 S. Telegraph Rd., Ste300
Bloomfield Hills, MI 48302
Fax: 248-888-0011
Email: casey.askar@yahoo.com

With a copy to:

Robert B. Nathan, Esq.
Nathan Zousmer, P.C.
29100 Northwestern Hwy.,
Suite 260
Southfield, Michigan 48034
Fax: 248-351-0487
[illegible]

or to such other place as a party may from time to time designate in a notice to the other parties.

**IN WITNESS WEREOF**, the parties hereto have executed this Agreement as of the day and year first above written.

KOUSAY ASKAR

FRANK J. LOMBARDO,
Individually and as trustee of the Frank J. Lombardo Trust u/a/d November 11, 2002

STUART A. GOLD,
Operating Trustee of the Chapter 11 Bankruptcy Estate of Pita Franchise Corp.

JOHN J. SIMON,
Receiver Appointed By
The State Court

# Exhibit A

# PLEDGE AGREEMENT

This Pledge Agreement ("Agreement") is made on ___________, 2010 between Kousay Askar a/k/a Casey Askar, whose address is ______________________________ ("Debtor"), and Frank J. Lombardo, Individually and as Trustee of the Frank J. Lombardo Trust Under Agreement Dated November 11, 2002, whose address is 48238 Lake Valley Circle, Shelby Township, Michigan 48317 ("Secured Party").

1. **Grant of Security Interest**

Debtor grants to Secured Party a security interest in the following property: (a) all capital stock of Pita Franchise Corp., a Michigan corporation (the "Corporation"), owned by Debtor including, but not limited to, all Class A common stock of the Corporation owned by Debtor ("Property"); (b) all securities, security entitlements, stock options and other financial assets, instruments, and other property ("Additional Property") at any time received or receivable by Debtor by reason of any stock dividend, stock split, recapitalization, reclassification, merger, consolidation, liquidation, exchange, renewal, redemption, substitution, or other transaction regarding the above-described Property or regarding any Additional Property; (c) all dividends, interest, and other distributions at any time received or receivable by Debtor with respect to any of the above-described Property or any Additional Property; and (d) all proceeds of the foregoing. The foregoing properties and proceeds including, but not limited to, the Property and Additional Property are referred to in this Agreement as "Collateral."

2. **Indebtedness Secured**

The security interest is given to secure payment and performance of all indebtedness and obligations of Debtor to Secured Party under this Agreement, and all indebtedness and obligations of Debtor to Secured Party under the Settlement Agreement ("Settlement Agreement") of even date herewith by and between Debtor, Stuart A. Gold, the operating trustee of the Chapter 11 bankruptcy estate of the Corporation, Secured Party and to a limited extent, John J. Simon, in his capacity as a court appointed receiver. The indebtedness and obligations that are secured by this security interest are collectively called the "Indebtedness."

3. **Warranties and Representations**

Debtor represents and warrants to, and agrees with, Secured Party as follows:

a. Debtor has full power and authority to enter into and perform his obligations under this Agreement and this Agreement is the valid and binding obligation of Debtor, enforceable in accordance with its terms.

b. Debtor owns the Collateral and has the unqualified right to transfer the Collateral to Secured Party. Except for this Agreement, the Collateral is not subject to any security interest, lien, encumbrance, adverse claim, or other claim in favor of any

third party, or to any right or option of any third party to purchase or acquire any of the Collateral.

c. Each instrument, security, or other financial asset included in the Collateral is genuine and what it purports to be and has not been materially altered.

d. Debtor's address set forth on the first page of this Agreement is the location of Debtor's residence.

4. **Agreements of Debtor**

Debtor agrees that:

a. Debtor will promptly sign and deliver to Secured Party all stock powers, bond powers, assignments, endorsements, powers of attorney, agreements instructions to issuers, securities intermediaries, and other parties, and other documents that Secured Party may from time to time request to perfect Secured Party's security interest in the Collateral or to facilitate transfer of the Collateral.

b. Debtor will not sell, lease, transfer, or assign any Collateral or any interest in any Collateral or permit any Collateral to be transferred by operation of law.

c. Debtor will pay promptly when due all taxes and assessments upon the Collateral or for its use or ownership.

d. Debtor will furnish Secured Party with such information regarding the Collateral as Secured Party may request and will allow Secured Party at any reasonable time to inspect Debtor's records regarding the Collateral.

e. Debtor will promptly deliver to Secured Party an original assignment separate from certificate executed by Debtor and assigning the Property to Secured Party (the "Assignment") and all certificates and other instruments or documents evidencing title or rights to the Collateral, including certificates and other instruments and documents that Debtor receives in the future. Secured Party will retain possession of the Assignment and all stock certificates evidencing the Collateral until the Indebtedness has been paid in full.

f. Debtor will immediately notify Secured Party in writing of any change in Debtor's name and of any change in the location of Debtor's residence.

5. **Secured Party's Rights**

a. If Debtor fails to perform any of Debtor's obligations under this Agreement, then Secured Party may, without giving Debtor notice to or obtaining the consent of Debtor, perform that obligation on Debtor's behalf. (This may include, for

example, signing stock powers and other documents described in paragraph 4(a) of this Agreement.) To the extent necessary, Debtor appoints Secured Party as Debtor's agent and attorney-in-fact with full power and authority to perform any such obligations. Debtor will reimburse Secured Party on demand for any expense that Secured Party incurs in performing any such obligation and will pay to Secured Party interest on expense, from the date the expense was incurred by Secured Party, at an annual rate equal to the lesser of (i) seven percent (7.0%); or (ii) the highest rate to which Debtor could lawfully agree in writing. Secured Party is not required to perform an obligation that Debtor has failed to perform. If Secured Party does so, then that will not be a waiver of Secured Party's right to declare the Indebtedness immediately due and payable because of Debtor's failure to perform.

b. With respect to the custody and preservation of the Collateral in its possession, Secured Party's only duty will be to use reasonable care. Secured Party will have no obligation to take any steps necessary to preserve rights against prior parties. Secured Party will have no duty to sell any Collateral even if its value declines. Secured Party will have no obligation to exercise, or to notify Debtor of, any conversion or redemption rights or to take any similar action with regard to any such Collateral.

6. **Default and Acceleration**

If any of the following occurs, the Indebtedness will, at Secured Party's option, become immediately due and payable, without notice or demand to Debtor:

a. If default occurs in the payment or performance of all or any part of any of the Indebtedness, when and as it is due and payable.

b. If default occurs in the performance of any obligation of Debtor under this Agreement, the Settlement Agreement, or under any other security agreement, loan agreement, assignment, guaranty, or other agreement that now or later secures or relates to any of the Indebtedness, the Settlement Agreement or any other indebtedness or obligation now or later owing by Debtor to Secured Party ("Security Documents").

c. If any warranty, representation, or other statement that has been or in the future is made to Secured Party by Debtor or by any guarantor of all or part of the Indebtedness in this Agreement, the Settlement Agreement or in any Security Document or otherwise, was false in any material respect when made or furnished.

d. If any lien, security interest, or other encumbrance or any writ of attachment, garnishment, levy, execution, or other legal process is ever issued against or placed upon any of the Collateral.

**e. If Debtor dies, becomes insolvent, or makes an assignment for the benefit of creditors.**

f. If any guaranty that now or in the future secures payment or performance of all or any part of the Indebtedness is terminated or limited for any reason, without the written consent or agreement of Secured Party.

**g. If a petition for relief is filed by or against the Corporation under any chapter of the federal Bankruptcy Code.**

h. If the Corporation defaults under any of its obligations under the Settlement Agreement.

i. If there occurs any other event or condition that Secured Party reasonably believes seriously reduces the value to Secured Party of the Collateral.

**If a voluntary or involuntary case in bankruptcy, receivership, or insolvency is ever commenced by or against Debtor or the Corporation, then the entire Indebtedness shall automatically become immediately due and payable, without notice or demand. All or any part of the Indebtedness also may become, or may be declared to be, immediately due and payable under the terms of any note at any time evidencing any of the Indebtedness or of any Security Document or other agreement entered into between Debtor and Secured Party.**

7. **Remedies**

Secured Party shall have all of the rights and remedies of a secured party under applicable laws. Without limiting those rights and remedies, if all or any part of the Indebtedness is not paid at maturity:

a. Secured Party will have the right, but no obligation, without notice to Debtor and without Debtor's consent, to vote or give any consent with regard to any of the Collateral consisting of securities and to enter into extensions, reorganizations, mergers, consolidations, or other agreements relating to the securities and, in connection with the transaction, to deposit or surrender control of any of the securities, to accept other property or money in exchange for them, and to take any other actions regarding the securities that Secured Party considers desirable.

b. Secured Party shall have the right, but no obligation, to revoke and terminate any or all rights that Secured Party shall have given to Debtor or permitted Debtor to retain, to control any uncertificated security, security entitlement, or securities account included in the Collateral.

c. Secured Party will have the right, but no obligation, to exercise and enforce any or all of Debtor's rights and remedies with respect to the Collateral, including, but not limited to, the right to demand, enforce payment of, collect, and receive all dividends, interest, principal payments, and other sums at any time owing with respect to any of the Collateral, and to apply the sums to the Indebtedness in the manner

that Secured Party determines.

d. Secured Party may sell or otherwise dispose of the Collateral in any commercially reasonable manner. Any notification required to be given by Secured Party to Debtor regarding any sale or other disposition of Collateral shall be considered reasonable if mailed at least ten days before the sale or other disposition.

e. The proceeds of any collection or disposition of Collateral shall be applied first to Secured Party's attorney fees and expenses, as provided in paragraph 8, and then to the Indebtedness, in the manner that Secured Party shall determine, and Debtor shall be liable for any remaining deficiency.

All rights and remedies of Secured Party shall be cumulative and may be exercised from time to time.

8. **Expenses**

Debtor shall reimburse Secured Party on demand for all attorney fees, legal expenses, and other expenses that Secured Party incurs in protecting and enforcing Secured Party's rights under this Agreement. This includes fees and expenses incurred in trying to obtain possession of the Collateral from Debtor, **a trustee or receivor in bankruptcy,** or any other person. Secured Party may apply any proceeds of collection or disposition of the Collateral to Secured Party's reasonable attorney fees, legal expenses, and other expenses.

9. **Amendments and Waivers**

No provision of this Agreement may be modified or waived except by a written agreement signed by Secured Party. Secured Party will continue to have all of Secured Party's rights under this Agreement even if Secured Party does not fully and promptly exercise them on all occasions.

Debtor waives all defenses based on suretyship or impairment of Collateral. Without limiting the generality of the preceding sentence, Secured Party may, at Secured Party's option, (a) waive any default or defer an action on any default; (b) extend or modify the time or manner of payment of the Indebtedness or waive or modify any term or condition relating to the Indebtedness; (c) release the Collateral or other security for the Indebtedness; (d) release any person liable for any of the Indebtedness, including any debtor or guarantor; or (e) make advances or other extensions of credit secured by this Agreement; all without giving Debtor notice or obtaining Debtor's consent. Any such action by Secured Party will not release or impair Secured Party's security interest in the Collateral or Debtor's obligations under this Agreement. Secured Party's security interest in the Collateral and Debtor's obligations under this Agreement will not be released or impaired if Secured Party fails to obtain, perfect, or secure priority of any other security for the Indebtedness that is agreed to be given, or is given, by anyone else. Secured Party is not required to sue upon or otherwise enforce payment of the Indebtedness or any other security before exercising Secured Party's rights under this Agreement.

10. **Notices**

Any notice to Debtor or Secured Party shall be deemed to have been given when mailed, with postage prepaid, to the respective address of Debtor or Secured Party appearing on the first page of this Agreement, or if and when delivered personally.

11. **Definition**

In this Agreement, "maturity" of any of the Indebtedness means the time when that Indebtedness has become due and payable, for any reason (including, for example, acceleration due to default or bankruptcy).

12. **Governing Law**

This Agreement shall be governed by and interpreted according to Michigan law.

13. **Binding Effect**

This Agreement shall be binding upon and inure to the benefit of Debtor and Secured Party and their respective heirs, personal representatives, successors, and assigns.

Debtor and Secured Party have executed this Agreement on the date written on the first page of this Agreement.

**DEBTOR:**

__________________________________
KOUSAY ASKAR a/k/a CASEY ASKAR

**SECURED PARTY:**

__________________________________
FRANK J. LOMBARDO, INDIVIDUALLY AND AS TRUSTEE OF THE FRANK J. LOMBARDO TRUST UNDER AGREEMENT DATED NOVEMBER 11, 2002

J:\Lombardo, Frank\02 - Lombardo v Pita Franchise Corp\Settlement Docs\Pledge Agreement2.docx
8/19/2010

# Exhibit B

## CONSULTING AGREEMENT

THIS CONSULTING AGREEMENT is entered into as of the ___ day of August, 2010 ("Effective Date"), by and between Papa Romano's Enterprises, LLC[1], a Michigan limited liability company(hereinafter referred to as "PRE"), and Kousay Askar a/k/a Casey Askar (hereinafter referred to as "ASKAR").

RECITALS:

A. PRE is the franchisor of the Papa Romano's restaurant franchise.

B. ASKAR is an individual who provides, among other things, consulting services for franchisors of restaurant concepts.

C. PRE is desirous of contracting with ASKAR to provide consulting services in connection with its operation of its Papa Romano's restaurant concept.

D. ASKAR is willing to provide such consulting services to PRE upon the following terms and conditions.

NOW, THEREFORE, in consideration of the mutual promises, covenants and agreements set forth herein, the adequacy, sufficiency and receipt of which are hereby acknowledged, the parties hereto hereby agree as follows:

**1. Services.** ASKAR shall provide such consulting services as are required by PRE from time to time, at such reasonable times as PRE may request.

**2. Compensation.** PRE shall pay ASKAR the sum of $15,000.00 (the "Consulting Fee"), on the first day of each month during the term of this Agreement, commencing October 1, 2010, regardless of the amount of services ASKAR renders during any month.

**3. Independent Contractor.** ASKAR's relationship to PRE shall be that of an independent contractor and not of an employee or agent. PRE shall have no liability to ASKAR, except to pay the Consulting Fee, as set forth hereinabove.

**4. Term.** The term of this Agreement shall commence upon the Effective Date and shall continue thereafter until March 31, 2012.

1 Papa Romano's #2, LLC merged with Papa Romano's Enterprises, Inc. and both became Papa Romano's Enterprises, LLC on August 31, 2009.

5. **Assignment of Compensation by Askar.** PRE acknowledges that ASKAR has assigned his right to receive the first $270,000.00 of the Consulting Fee to Frank Lombardo under a certain Settlement Agreement entered into by, among others, Frank Lombardo, Pita Franchise Corp., and ASKAR (the "Settlement Agreement"). In accordance with the terms of the Settlement Agreement, PRE agrees to pay the first $270,000.00 of the Consulting Fee to Frank Lombardo and O'Reilly Rancilio, P.C., thereafter, the Consulting Fee shall be paid to ASKAR. PRE and ASKAR acknowledge and agree that Frank Lombardo is an intended third-party beneficiary of this agreement so far as, and until such time as the first $270,000.00 of the Consulting Fee is paid to Frank Lombardo. ASKAR further agrees that Frank Lombardo may file a UCC-1 perfecting his security interest in and to the above referenced payments.

6. **Entire Agreement.** This Agreement constitutes the entire agreement between the parties hereto and contains all of the agreements between said parties with respect to the subject matter hereof excluding the Settlement Agreement. There is no statement, promise, agreement, or obligation in existence which may conflict with the terms of this Agreement or may modify, enlarge or invalidate this Agreement or any provision hereof. None of the prior and/or contemporaneous negotiations, preliminary drafts, or prior versions of this Agreement leading up to its execution and not set forth herein shall be used by any of the parties to construe or affect the validity of this Agreement. Each party acknowledges that no representation, inducement or condition not set forth herein has been made or relied upon by any party. Further, this Agreement supersedes any and all other agreements, either oral or in writing, between the parties hereto.

7. **Amendment.** This Agreement may not be modified, amended and/or waived, unless such modification, amendment and/or waiver is in writing and signed by all parties to this Agreement. Further, the Agreement may not be modified, amended and/or waived until such time as Frank Lombardo receives the first $270,000.00 of the Consulting Fee.

8. **Michigan Law.** This Agreement has been delivered in Michigan and shall be construed in accordance with the laws of the State of Michigan. Whenever possible each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement. The rights and privileges of the parties hereto shall inure to the benefit of their respective successors, assigns and heirs, and this Agreement shall be binding on all heirs, executors, administrators, assigns and successors of the parties hereto.

9. **Notices.** Any notices necessary or required according to the terms of this Agreement shall be deemed sufficient if in writing and sent by first class mail postage pre-paid, to the parties at the address set forth hereinbelow, or to such other address as the party to

receive notice may designate in writing to the other party prior to the time such notice is necessary or required to be sent:

| If to PRE: | If to ASKAR: |
| --- | --- |
| | 2525 S. Telegraph Rd.<br>Ste. 300<br>Bloomfield Hills, Mi 48302 |

Unless otherwise provided by the contrary, all notices shall be effective two (2) days after mailing, or upon actual receipt, whichever occurs first.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

**"PRE"**

**PAPA ROMANO'S ENTERPRISES, LLC**

By______________________________
Sam Askar
Its: Managing Member

**"ASKAR"**

______________________________
Kousay Askar

# Exhibit C

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF MACOMB

FRANK J. LOMBARDO,

Plaintiff and
Counter-Defendant,

v

Case No. 2008-5324-CK

KOUSAY ASKAR a/k/a CASEY ASKAR,
and PITA FRANCHISE CORP.,
a Michigan corporation,

Hon. Donald G. Miller

Defendants and
Counter-Plaintiffs.

______________________________________________/

O'REILLY RANCILIO P.C.
Charles E. Turnbull (P29420)
Lawrence M. Scott (P30228)
Bruce H. Hoffman (P44005)
Attorney for Plaintiff
12900 Hall Road, Suite 350
Sterling Heights, MI 48313-1151
(586) 726-1000

WOLFE LAW GROUP, PLLC
Jack B. Wolfe (39667)
Attorneys for Defendants
24901 Northwestern Hwy, Suite 122
Southfield, MI 48075
(248) 809-2005
(248) 229-1187

______________________________________________/

**STIPULATED ORDER STAYING EXECUTION OF JUDGMENTS AND DISMISSING RECEIVER**

This matter comes before the Court on the stipulation of the parties hereto, the parties having reached an agreement regarding installment payments on the judgments against Kousay Askar, Defendant Kousay Askar having agreed to make eighteen (18) monthly payments, beginning October 1, 2010, as set forth in the parties' Settlement Agreement, and the court being fully advised in the premises:

IT IS HEREBY ORDERED that John Simon, appointed via the Court's Order Appointing Receiver for Kousay Askar only, entered April 12, 2010, is dismissed as receiver and the receivership is terminated.

IT IS HEREBY FURTHER ORDERED that execution by Plaintiff on the Judgments obtained in this matter against the Defendants is stayed until further order of this Court, as set forth below.

IT IS HEREBY FURTHER ORDERED that in the event that Kousay Askar fails to make any required monthly payment (as set forth in the parties' Settlement Agreement) within seven days of receipt of written notice of such failure to Kousay Askar and his attorney, Robert B. Nathan, Plaintiff shall file an affidavit of default with the Court, and thereafter be entitled to submit, and the Court will grant, an ex parte order (1) lifting the stay of execution on the Judgments, and (2) appointing a receiver for Kousay Askar.

IT IS SO ORDERED

CIRCUIT COURT JUDGE

**APPROVED AS TO FORM AND CONTENT;**
**NOTICE OF ENTRY WAIVED:**

Jack B. Wolfe (P39667)
Attorney for Defendants

James J. Sarconi (P66101)
Attorney for Plaintiff

# Exhibit D

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In the matter of:

PITA FRANCHISE CORPORATION

Debtor.
_____________________________/

Case 10-51895-tjt
Chapter 11
Hon. Thomas J. Tucker

**ORDER GRANTING TRUSTEE'S MOTION FOR:**
**(i) APPROVAL OF SETTLEMENT AGREEMENT; AND (ii) DIMISSAL OF THIS BANKRUPTCY CASE PURSUANT TO 11 U.S.C. 1112(b)**

This matter having come before the Court pursuant to Trustee's Motion For (i) Approval Of Settlement Agreement; And (ii) Dismissal Of This Bankruptcy Case Pursuant To 11 U.S.C. 1112(b) (the "Motion"); notice of the Motion having been duly served in accordance with all applicable rules; no objection to the Motion having been filed; and the Court being otherwise duly advised of the facts upon which the Motion is based;

**ACCORDINGLY, IT IS HEREBY ORDERED** as follows:

1. The Motion is granted, and the Settlement Agreement (a copy of which is attached as Exhibit 2 to the Motion) and the settlement provided for therein is approved.[1]

2. The Closing shall be scheduled within fourteen days from the entry of this Order.

3. Among other things, the following events shall occur at the Closing:

1 All capitalized terms herein shall have the same meaning assigned to them in the Motion.

(a) Trustee shall pay himself $20,000 from the Trustee Fund as compensation for Trustee's fee in connection with this bankruptcy case;

(b) Trustee shall turn over the Co-Op Funds to Pita Corp.;

(c) The Down Payment (consisting of the Receiver Fund and the $111,346 held in Lombardo's attorneys' client trust account) shall be released to Lombardo; and

(d) All of the documents and agreements contemplated by the Settlement Agreement shall be executed and exchanged. Trustee is authorized to execute any and all documents necessary to effectuate the terms of the Settlement Agreement.

4. As soon as possible after Closing, Trustee shall pay from the Trustee Fund any and all administrative expenses, including any amounts owing to the United States Trustee.

5. Within 15 days after the Closing, Trustee's counsel shall file a final fee application with the Bankruptcy Court.

6. Trustee shall pay from the Trustee Fund, the amount of fees and costs approved by the Bankruptcy Court with respect to Trustee's counsel's fee application.

7. After payments are made to Trustee's counsel, the United States Trustee and any other administrative expense claimants, any amounts remaining in Trustee's Fund shall be refunded by Trustee to Askar.

8. Within 5 days of the payment of the amounts remaining in the Trustee Fund to Askar, Trustee shall file a certification (the "Certification") with the Court indicating that: (i) the Closing has occurred; (ii) all payments required to be made by Trustee pursuant to the Settlement Agreement have been made; and (iii) the case is ready to be dismissed.

9. Upon receipt of the Certification, the Court will enter an order dismissing this bankruptcy case.

# Notice Of Opportunity

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In the matter of:

PITA FRANCHISE CORPORATION

Debtor.
_________________________________/

Case 10-51895-tjt
Chapter 11
Hon. Thomas J. Tucker

**NOTICE OF OPPORTUNITY TO RESPOND TO TRUSTEE'S MOTION FOR: (i) APPROVAL OF SETTLEMENT AGREEMENT; AND (ii) DISMISSAL OF THIS BANKRUPTCY CASE PURSUANT TO 11 U.S.C. 1112(b)**

Stuart A. Gold ("Trustee"), operating trustee of the Chapter 11 bankruptcy estate of Pita Franchise Corporation, has filed Trustee's Motion For: (i) Approval Of Settlement Agreement; And (ii) Dismissal Of This Bankruptcy Case Pursuant To 11 U.S.C. 1112(b) (the "Motion"), a copy of which accompanies this notice. A copy of the Settlement Agreement is attached to the Motion as Exhibit 2.

**Your rights may be affected.** You should read the papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you want the Court to consider your views on this Motion, then you or your attorney must:

1. **On or before 21 days after the date of this notice,** file with the Court a written response or answer explaining your position, either electronically via the Court's ECF system, or by mail to:

United States Bankruptcy Court
211 W. Fort St., Ste. 2100
Detroit, MI 48226

If you mail your response or answers to the Court for filing, you must mail it early enough so that the Court will receive it on or before 21 days after the date of this notice.

You must also serve a copy of your response or answer electronically or by mailing to:

Howard S. Sher, Esq.
Jacob & Weingarten, P.C.
2301 W. Big Beaver Rd.
Suite 777
Troy, Michigan 48084

2. If a response or answer is timely filed and served, the Court will schedule a hearing on the Motion and you will be served with notice of the date, time and location of the hearing.

3. If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an order granting that relief.

JACOB & WEINGARTEN, P.C.

Dated: August 26, 2010

By: /s/ Howard S. Sher

Howard S. Sher (P38337)
Michele L. Walton (P70795)
Attorneys for Stuart A. Gold,
Operating Trustee of the
Chapter 11 Bankruptcy Estate
2301 W. Big Beaver Road
Suite 777
Troy, Michigan 48084
(248) 649-1900
howard@jacobweingarten.com

# Proof Of Service

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In the matter of:

PITA FRANCHISE CORPORATION

Debtor.
_______________________________/

Case 10-51895-tjt
Chapter 11
Hon. Thomas J. Tucker

## PROOF OF SERVICE

I, Teri Breaugh, state that on August 26, 2010, I filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to all registered users.

I also state that I did send a copy of Trustee's Motion For: (i) Approval Of Settlement Agreement; And (ii) Dismissal Of This Bankruptcy Case Pursuant To 11 U.S.C. 1112(b) and Notice Of Opportunity To Respond To Trustee's Motion For: (i) Approval Of Settlement Agreement; And (ii) Dismissal Of This Bankruptcy Case Pursuant To 11 U.S.C. 1112(b) by first class mail to:

Brooks Kushman, P.C.
1000 Town Center
22nd Floor
Southfield, MI 48075-1242

DHL Express
14105 Collections Ctr. Dr.
Chicago, IL 60693-0001

IFA International Franchise Assoc.
1501 K. Street NW, Ste. 350
Washington, DC 20005-1412

May, Simpson & Strote, P.C.
100 W. Long Lake Rd., Suite 200
Bloomfield Hills, MI 48304-2774

Nexstep Systems Inc
2075 West Big Beaver Ste. 330
Troy, MI 48084-3439

Sign Waves
5535 Ptr. Tremble Rd.
Algonac, MI 48001-4372

Carl Marlinga
Marlinga Law Group
43550 Elizabeth Road
Clinton Township, MI 48036-4807

GMAC
PO Box 9001948
Louisville, KY 40290-1948

R & P Foods
34884 Garfield
Frazier, MI 48026-4011

Askar Management Group
8101 Richardson Rd.
Ste. 101
Walled Lake, MI 48390-4115

Glass Palace
4 Championship Dr.
Auburn Hills, MI 48326-1753

Mooslyvania Marketing, LC
7303 Marietta
Saint Louis, MO 63143-3101

Sara Lee
3470 Rider Trail South
Earth City, MO 63045-1109

Robert Nathan
Nathan Zousmer PC
29100 Northwestern Hwy Ste 260
Franklin Ctr
Southfield, MI 48034

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed: August 26, 2010

/s/ Teri Breaugh
Teri Breaugh
howard@jacobweingarten.com